United States District Court
Southern District of Texas
**ENTERED**
August 24, 2020
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | | |
|---|---|---|
| ORLANDO MUNGUIA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 7:20-cv-00070 |
| | § | |
| PENNYMAC LOAN SERVICES, LLC, | § | |
| | § | |
| Defendant. | § | |

## OPINION AND ORDER

The Court now considers "Defendant's Motion for Summary Judgment,"[1] Plaintiff's response,[2] and Defendant's reply,[3] and "Plaintiff's Motion for Leave to File Amended Pleading,"[4] and Defendant's response.[5] After considering the motions, record, and relevant authorities, the Court **DENIES** Plaintiff's motion to amend and **GRANTS** Defendant's motion for summary judgment.

### I.  BACKGROUND AND PROCEDURAL HISTORY

This is a foreclosure case. All factual allegations are taken from Plaintiff's live pleading, the First Amended Complaint.[6] Plaintiff Orlando Munguia executed a Deed of Trust and Promissory Note in 2018 payable to Willow Bend Mortgage to purchase his homestead in McAllen, Texas.[7] Plaintiff alleges that his mortgage was assigned to one other entity, then to Defendant PennyMac Loan Services, LLC, who refused Plaintiff's payments, refused to communicate with him, and in January 2020, ultimately foreclosed on Plaintiff's home and

---

[1] Dkt. No. 17.
[2] Dkt. No. 18.
[3] Dkt. No. 20.
[4] Dkt. No. 19.
[5] Dkt. No. 21.
[6] Dkt. No. 15.
[7] *Id.* at 2–3, ¶ 4.2.

directed him to vacate.[8] Plaintiff brings causes of action for common law fraud, wrongful foreclosure, breach of contract, a Texas Declaratory Judgment Act claim to declare the Substitute Trustee's Deed invalid, and for injunctions against Defendant.[9]

This case was originally filed in state court but was removed to this Court in March 2020.[10] The parties are agreed that this Court has jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds the $75,000 threshold.[11] Plaintiff resides in Texas and Defendant is a Delaware company.[12] The Court granted Plaintiff's motion for leave to file his First Amended Complaint and issued a scheduling order in April 2020.[13] The scheduling order set June 12, 2020, as the deadline for Plaintiff to move to amend.[14] Defendant answered in April,[15] then moved for summary judgment in June.[16] Three weeks after Defendant's motion, on July 16, 2020, Plaintiff both responded to Defendant's motion and moved to amend his complaint.[17] The motions are ripe for consideration.

## II. MOTION TO AMEND

The Court will first turn to Plaintiff's motion for leave to amend because resolution of the motion will determine which complaint is Plaintiff's live pleading for consideration of Defendant's motion for summary judgment.

### a. Legal Standards

---

[8] *Id.* at 3, ¶¶ 4.2–4.5.
[9] *Id.* at 4–8.
[10] Dkt. No. 1.
[11] Dkt. No. 6 at 2, ¶¶ 5–6.
[12] Dkt. No. 15 at 1, ¶¶ 1.0–1.1.
[13] Dkt. Nos. 11, 14.
[14] Dkt. No. 11.
[15] Dkt. No. 16.
[16] Dkt. No. 17.
[17] Dkt. Nos. 18–19.

With respect to Plaintiff's motion to amend, Federal Rule of Civil Procedure 16(b) governs motions to amend after the Court's scheduling order deadline for such motions.[18] Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." Plaintiff's motion was filed 34 days after the court-ordered deadline and so must meet a heightened standard. "Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."[19] "In determining good cause, [the Court considers] four factors: (1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[20] Moreover, "the good cause standard requires the party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[21]

If Plaintiff clears the Rule 16 hurdle, the standard of Rule 15 applies. After the deadline for amending a pleading once as a matter of course,[22] "a party may amend its pleading only with the opposing party's written consent or the court's leave."[23] Plaintiff has already amended once on April 20, 2020,[24] so Plaintiff's July 16, 2020, motion to amend[25] is after the 21-day deadline and absent Defendant's consent, and therefore requires the Court's leave. "Leave to amend is in no way automatic, but the district court must possess a substantial reason to deny a party's request for leave to amend."[26] In determining whether to allow leave to amend a pleading, courts

---

[18] *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 348 (5th Cir. 2008).

[19] *S&W Enters. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536 (5th Cir. 2003).

[20] *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003) (quotation omitted).

[21] *Id.* (quotations omitted).

[22] *See* FED. R. CIV. P. 15(a)(1).

[23] FED. R. CIV. P. 15(a)(2).

[24] Dkt. No. 15.

[25] Dkt. No. 19.

[26] *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quotation omitted).

examine whether there is (1) undue delay; (2) bad faith or dilatory motive; (3) repeated failure to cure deficiencies by previous amendments; (4) undue prejudice to the opposing party; and (5) futility of the amendment.[27] As to the fifth factor, the Fifth Circuit has held that courts "need not indulge in futile gestures. Where a complaint, as amended, would be subject to dismissal, leave to amend need not be granted."[28] Absent such factors, the Court should freely grant the requested leave.[29] Nonetheless, the decision whether to grant leave to amend lies within the Court's sound discretion.[30] "At some point a court must decide that a plaintiff has had a fair opportunity to make his case; if, after that time, a cause of action has not been established," this Court will dismiss the suit.[31]

To determine whether a proposed amended complaint is futile, the Court applies the Federal Rule of Civil Procedure 12(b)(6) standard.[32] Under Rule  12(b)(6), to avoid dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[33] The Court accepts all well-pleaded facts as true (even if doubtful or suspect[34]) and views those facts in the light most favorable to the plaintiff (because a Rule 12(b)(6) motion is viewed with disfavor[35]), but will not strain to find inferences favorable to the plaintiff.[36] A plaintiff need not plead detailed factual allegations, but must plead more than "'naked assertion[s] devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the

---

[27] *SGK Props., L.L.C. v. U.S. Bank Nat'l Ass'n*, 881 F.3d 933, 944 (5th Cir.) (quoting *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004)), *cert. denied*, 139 S. Ct. 274 (2018).

[28] *United States ex rel. Jackson v. Univ. of N. Tex.*, 673 F. App'x 384, 388 (5th Cir. 2016) (quoting *DeLoach v. Woodley*, 405 F.2d 496, 496–97 (5th Cir. 1968) (per curiam)).

[29] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

[30] *Smith*, 393 F.3d at 595 (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

[31] *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).

[32] *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000).

[33] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[34] *Twombly*, 550 U.S. at 555–56.

[35] *Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013) (quoting *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) ("This court construes facts in the light most favorable to the nonmoving party, 'as a motion to dismiss under 12(b)(6) "is viewed with disfavor and is rarely granted."'").

[36] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

elements of a cause of action, supported by mere conclusory statements" to survive a motion to dismiss.[37] Courts first disregard any conclusory allegations or legal conclusions[38] as not entitled to the assumption of truth,[39] and then undertake the "context-specific" task, drawing on judicial experience and common sense, of determining whether the remaining well-pled allegations give rise to entitlement to relief.[40] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[41] Courts have "jettisoned the [earlier] minimum notice pleading requirement"[42] and the complaint must plead facts that "nudge" the claims "across the line from conceivable to plausible."[43] The complaint must plead every material point necessary to sustain recovery; dismissal is proper if the complaint lacks a requisite allegation.[44] However, the standard is only "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success."[45] The Court is limited to assessing only the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which the Court may take judicial notice.[46]

### b. Federal Rule of Civil Procedure 16 Analysis

---

[37] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also id.* at 679 (holding that a complaint that "do[es] not permit the court to infer more than the mere possibility of misconduct" does not suffice to state a claim).

[38] *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quotation omitted) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

[39] *Mustapha v. HSBC Bank USA, NA*, No. 4:11-CV-0428, 2011 WL 5509464, at *2 (S.D. Tex. Nov. 10, 2011) (Hanks, J.) ("[A] court is not required to accept conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.").

[40] *Iqbal*, 556 U.S. at 678–79; *see also Fernandez-Montez v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir. 1993) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss").

[41] *Iqbal*, 556 U.S. at 678.

[42] *St. Germain v. Howard*, 556 F.3d 261, 263 n.2 (5th Cir. 2009).

[43] *Iqbal*, 556 U.S. at 680 (quoting *Twombly*, 550 U.S. at 570).

[44] *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006); *accord Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

[45] *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010))

[46] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

Plaintiff's 3-page motion to amend does not address Federal Rule of Civil Procedure 16(b) or assert that Plaintiff's late filing should be excused.[47] In fact, Plaintiff argues he "needed to correct some factual mistakes and further clarify certain claims" and add three new claims, even though all allegations "pertai[n] to the same set of circumstances as previously plead" and Plaintiff simply did not contemplate these avenues of relief "beforehand."[48] Plaintiff offers no explanation for why the proposed amendments were not part of Plaintiff's First Amended Complaint, filed after Defendant moved to dismiss Plaintiff's original complaint.[49] Accordingly, Plaintiff cannot show that he could not meet the Court's deadline despite his diligence or adequately explain his failure to timely move to amend. Furthermore, there is potential prejudice in allowing the amendment. Defendant's motion for summary judgment is already fully briefed[50] and Plaintiff's amendment likely obviates the parties' effort in teeing up the motion. Also, Plaintiff's deadline to identify experts and provide expert reports was July 17, 2020, and Defendant's deadline to do the same was August 17, 2020.[51] Adding new causes of action almost certainly prejudices the parties' expert disclosures, which were calculated to Plaintiff's existing claims and allegations. Plaintiff does not argue that the importance of the amendment should override this analysis or request a continuance to cure the prejudice of a new amended complaint.[52]

Accordingly, the Court holds that Plaintiff has not demonstrated good cause to modify the scheduling order and a late amendment will not be allowed.[53]

### c.   Federal Rule of Civil Procedure 15 Analysis

---

[47] Dkt. No. 19.
[48] Dkt. No. 19 at 2, ¶ 1.4.
[49] *Cf.* Dkt. No. 14.
[50] Dkt. Nos. 17–18, 20.
[51] Dkt. No. 11 at 2.
[52] *See* Dkt. No. 19.
[53] *See S&W Enters. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 536–37 (5th Cir. 2003).

With respect to the undue delay, dilatory motive, and undue prejudice factors of Rule 15,[54] the Court's analysis is not substantially different than immediately above. The Court holds that three of the Rule 15 factors weigh against permitting Plaintiff leave to amend.

Plaintiff's motion breezily asserts that his motion for leave to amend is "not frivolous" and "to serve justice," but does not address the Rule 15 factors or argue that the new claims or allegations would not be futile.[55] Plaintiff seeks to add three new causes of action for negligence, rescission, and promissory estoppel.[56] Defendant argues that Plaintiff's proposed amended complaint is futile because it "fails to state a claim upon which relief can be granted."[57]

First with respect to negligence, Plaintiff alleges in the proposed amended complaint that Defendant owed a legal duty but failed "to act reasonably with respect to their contractual obligations set forth in the Loan" and "made it impossible" for Plaintiff to cure his mortgage.[58] But Plaintiff cites no authority for the proposition that Defendant owed this independent legal duty and negligently breached it.[59] Indeed, under Texas law, "[i]n the mortgage context, there is no special relationship between a mortgagor and a mortgagee, or between a servicer and a borrower, that would impose an independent common law duty on Defendant."[60] This Court has dismissed similar claims for failure to identify any independent legal duty.[61] Accordingly, the Court holds that Plaintiff's proposed amendment would be futile to the extent it attempts to assert a claim for negligence.

---

[54] *See supra* note 27.
[55] Dkt. No. 19 at 2, ¶¶ 1.4–2.1.
[56] *Id.* ¶ 1.4.
[57] Dkt. No. 21 at 5.
[58] Dkt. No. 19-1 at 8, ¶ 5.20.
[59] *See* Dkt. No. 19.
[60] *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 585 (N.D. Tex. 2013) (collecting cases).
[61] *Chan v. Wells Fargo Bank, N.A.*, No. CV M-11-381, 2012 WL 13046635, at *4 (S.D. Tex. Apr. 30, 2012) (Alvarez, J.).

In the proposed amended complaint, Plaintiff also requests the Court "employ the equitable doctrine of Rescission."[62] "Rescission is an equitable remedy that operates to extinguish a contract that is legally valid but must be set aside due to fraud, mistake, or for some other reason to avoid unjust enrichment."[63] However, Plaintiff simultaneously alleges Defendant breached the contract in its failure to offer Plaintiff notice and an opportunity to cure, and Plaintiff seeks contractual remedies.[64] Plaintiff makes no showing why contractual remedies would be inadequate or why the Court should extinguish the contract.[65] Accordingly, the Court holds that Plaintiff's proposed amended complaint would be futile to the extent it attempts to assert a claim for rescission.

Plaintiff last attempts to add a new claim for promissory estoppel.[66] However, "[t]o invoke promissory estoppel, the promisee must show that the promisor promised to sign a written agreement that complied with the statute of frauds."[67] Plaintiff alleges only that "Defendant made promises to Orlando during the phone conversations with him," but nothing about a written agreement.[68] The Court agrees with Defendant that "Plaintiff only alleges in conclusory fashion that PennyMac made unspecified oral promises to Plaintiff that he relied on in some unspecified way to his detriment."[69] Plaintiff's allegations could not state a claim for promissory estoppel. The Court holds that Plaintiff's proposed amended complaint would also be futile to the extent it attempts to assert a claim for promissory estoppel.

---

[62] Dkt. No. 19-1 at 7, ¶ 5.16.
[63] *Martin v. Cadle Co.*, 133 S.W.3d 897, 903 (Tex. App.—Dallas 2004, pet. denied).
[64] Dkt. No. 19-1 at 6, ¶¶ 5.10–5.14; *accord* Dkt. No. 18 at 9, ¶ 6.10 ("Orlando is entitled to declaration of validity of those contractual relations.").
[65] *See* Dkt. No. 19.
[66] Dkt. No. 19-1 at 8, ¶ 5.21.
[67] *Miller v. CitiMortgage, Inc.*, 970 F. Supp. 2d 568, 581 (N.D. Tex. 2013) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).
[68] Dkt. No. 19-1 at 8, ¶ 5.21.
[69] Dkt. No. 21 at 6 (citing Dkt. No. 19-1 at 8, ¶ 5.21).

The Court holds that Plaintiff failed to demonstrate good cause under Rule 16(b) to allow a late amendment and that the majority of factors under Rule 15 weigh against permitting Plaintiff leave to amend. For both of these reasons, Plaintiff's motion for leave to file his Second Amended Complaint is **DENIED**.[70]

### III. MOTION FOR SUMMARY JUDGMENT

The Court now considers whether Defendant is entitled to summary judgment.

#### a. Legal Standard

Federal Rule of Civil Procedure 56 provides that a court shall award summary judgment when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[71] A court reviews the evidence in the record in the light most favorable to the nonmovant and draws all reasonable inferences in the nonmovant's favor,[72] but the Court is under no duty to search the entire record in search of evidence to support the nonmovant's opposition to summary judgment.[73] The nonmovant's "conclusory statements, speculation, and unsubstantiated assertions cannot defeat a motion for summary judgment."[74] To earn summary judgment, however, a movant must point to competent evidence in the record, such as documents, affidavits, and deposition testimony[75] and must "articulate precisely how this evidence supports his claim."[76] "A fact is 'material' if its resolution could affect the outcome of the action,"[77] while a "genuine" dispute is present "only if a reasonable jury could return a

---

[70] Dkt. No. 19.
[71] FED. R. CIV. P. 56(a); *see Bulko v. Morgan Stanley DW Inc.*, 450 F.3d 622, 624 (5th Cir. 2006).
[72] *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).
[73] *Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996); *accord Adams Family Tr. v. John Hancock Life Ins. Co.*, 424 F. App'x 377, 380 n.2 (5th Cir. 2011).
[74] *RSR Corp.*, 612 F.3d at 857.
[75] FED. R. CIV. P. 56(c)(1).
[76] *RSR Corp.*, 612 F.3d at 857.
[77] *Burrell v. Dr. Pepper/Seven UP Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007).

verdict for the non-movant."[78] As a result, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."[79] "Although this is an exacting standard, summary judgment is appropriate where the only issue before the court is a pure question of law."[80]

The movant bears the initial burden of showing the absence of a genuine issue of material fact,[81] but may satisfy the burden by pointing out the absence of evidence to support the nonmovant's case if the nonmovant would bear the burden of proof with respect to that element at trial.[82] If the movant intends to rely on an affirmative defense, "it must establish beyond dispute all of the defense's essential elements."[83] If the movant meets its initial burden, the nonmovant "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts" that demonstrate the existence of a genuine issue for trial.[84] The nonmovant is "*required* to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim."[85] The nonmovant's demonstration cannot consist solely of "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation"[86] and a "mere scintilla of evidence" also will not do.[87]

### b. Analysis

#### 1. Breach of Contract Claim

---

[78] *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).
[79] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[80] *Sheline v. Dun & Bradstreet Corp.*, 948 F.2d 174, 176 (5th Cir. 1991).
[81] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[82] *Id.* at 325.
[83] *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 2006).
[84] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).
[85] *Id.* (emphasis added).
[86] *United States ex rel. Farmer v. City of Hous.*, 523 F.3d 333, 337 (5th Cir. 2008) (quoting *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002)).
[87] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010); *accord Germain v. US Bank Nat'l Ass'n*, 920 F.3d 269, 272 (5th Cir. 2019).

"The essential elements of a breach of contract claim are (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach. A breach of contract occurs when a party to the contract fails or refuses to do something that it has promised to do."[88] "The plaintiff bears the burden of demonstrating that he suffered a loss as a result of the breach."[89]

The parties do not dispute that they are bound by the Deed of Trust and Promissory Note.[90] Plaintiff's core argument is that Defendant breached the cure provisions of the Deed of Trust.[91] The Deed of Trust requires Defendant to give Plaintiff notice and an opportunity to cure a default by becoming current on payments.[92] The Texas Property Code requires these provisions.[93] Plaintiff attaches an affidavit, wherein Plaintiff Orlando Munguia declares that Defendant "told me my account was in default and then did not allow to fix it. In addition, I never received any of their subsequent demands."[94] Plaintiff's response brief reiterates "that Defendant Penny Mac made it impossible for [Plaintiff] to perform, cure, and/or reinstate under the Loan."[95]

However, the Fifth Circuit has squarely rejected Plaintiff's argument: "[W]e reject LSR's assertion that the Karnas' testimony of non-receipt of the notices creates a fact issue requiring trial."[96] The Texas Property Code merely requires the notice of default and opportunity to cure to

---

[88] *Permian Power Tong, Inc. v. Diamondback E&P, LLC*, 550 S.W.3d 642, 650 (Tex. App.—Tyler 2017, no pet.) (citation omitted).
[89] *Sport Supply Grp. v. Columbia Cas. Co.*, 335 F.3d 453, 465 (5th Cir. 2003).
[90] Dkt. No. 17 at 11; Dkt. No. 17-6 at 20; Dkt. No. 18 at 7, ¶ 6.2.
[91] Dkt. No. 18 at 7–8, ¶ 6.3.
[92] Dkt. No. 17-2 at 12–13, §§ 19, 22.
[93] *See* TEX. PROP. CODE ANN. § 51.002(b), (d) (West 2020).
[94] Dkt. No. 18-1 at 2.
[95] Dkt. No. 18 at 8, ¶ 6.6.
[96] *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016).

be sent via certified mail.[97] The Deed of Trust does not require more.[98] An "Authorized Representative" of Defendant PennyMac Loan Services, LLC avers that Defendant mailed a notice to Plaintiff, by both certified and first class mail, on June 25, 2019, and August 19, 2019.[99] Defendant included copies of such letters.[100] The dispositive inquiry under Texas law is not *receipt* of notice, but rather transmitting the proper notice through the mail, and "[f]or that reason, [Texas courts] have held there to be no genuine dispute as to the sending of notices required under Section 51.002 when the sole contravening evidence is the homeowner's affidavit asserting non-receipt."[101]

Furthermore, Plaintiff admits that he did not make "all payments called for under the Loan before the date the payments were due" and asserts that he "did not keep records of his payments and cannot remember exact events from that time period."[102] In fact, Plaintiff admits that, around the time Defendant contends he defaulted on his mortgage, he "was in and out of the hospital battling [his] chronic diabetes . . . and have [sic] bad memory since."[103] In the face of this evidence, Plaintiff argues only that the determination of whether a breach is material is usually a question of fact and it is a breach of contract to make performance of a contractual obligation impossible.[104] It is true that "[w]here one party to the contract, by wrongful means, prevents the other party from performing, as by making it impossible for him or her to perform, such action constitutes a breach of the agreement, the effect of which . . . excuses performance

---

[97] *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013) (citing TEX. PROP. CODE ANN. § 51.002(e)).
[98] Dkt. No. 17-2 at 11, § 15.
[99] Dkt. No. 17-1 at 3, ¶¶ 6–7.
[100] Dkt. No. 17-1 at 18, 31.
[101] *LSR Consulting*, 835 F.3d at 534.
[102] Dkt. No. 17-6 at 21, ¶¶ 10–11, 14.
[103] Dkt. No. 18-1 at 1.
[104] Dkt. No. 18 at 8–9, ¶¶ 6.4–6.8.

by the injured party."[105] But the only "wrongful means" that prevented performance or made performance "impossible" that Plaintiff points to is that he could not get a "clear answer" from Defendant's agents on the phone and he was "passed around from department to department."[106] Plaintiff cites no authority that bad customer service could somehow excuse him from complying with the Note and Deed of Trust, and the Court declines to recognize this argument. Plaintiff could have consulted the cure provisions of the Deed of Trust or—although he avers he never received them[107]—any of the three letters (dated June 20,[108] August 15,[109] or November 13, 2019[110]) that Defendant avers it sent.[111] Although unhelpful customer service has frustrated all of us at some point, only in severe circumstances not present here could it potentially constitute "wrongful conduct" that made Plaintiff's performance "impossible" and constitute a breach of contract.

In conclusion with respect to Plaintiff's breach of contract claim, Plaintiff admits that he did not tender performance under the Note and Deed of Trust by making all timely payments and has also failed to establish any breach, material or not, by Defendant. Plaintiff fails to establish any genuine dispute of material fact on his breach of contract claim. The Court agrees that Defendant is entitled to judgment as a matter of law. The Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's breach of contract claim and **GRANTS** judgment on the merits in favor of Defendant with respect to this claim.

### 2. *Wrongful Foreclosure Claim*

---

[105] *TLC Hosp., LLC v. Pillar Income Asset Mgmt., Inc.*, 570 S.W.3d 749, 765–66 (Tex. App.—Tyler 2018, pet. denied).
[106] Dkt. No. 18-1 at 2.
[107] Worth noting, however, is that plaintiff did receive the January 10, 2020, notice to vacate. Dkt. No. 18-1 at 2 (citing Dkt. No. 18-3).
[108] Dkt. No. 17-1 at 18.
[109] Dkt. No. 17-1 at 31.
[110] Dkt. No. 17-4 at 7.
[111] Dkt. No. 17-1 at 3, ¶¶ 6–7; Dkt. No. 17-4 at 3, ¶ 6.

"The elements of a wrongful foreclosure claim are: (1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."[112] "A person who suffers loss or material injury because of irregularities in the foreclosure sale is entitled to maintain a suit for wrongful foreclosure. The purpose of a wrongful foreclosure action is to protect mortgagors against those sales where, through mistake, fraud, or unfairness, the sale results in an inequitably low price."[113] "Proof of a wrongful foreclosure claim demands demonstration of a defect in the foreclosure sale proceedings . . . . A defect in foreclosure proceedings may occur when there is no default or when the sale is otherwise void."[114] A sale may be void for failure to strictly follow the terms of the deed of trust.[115]

Plaintiff first "contends the foreclosure is defective because his account was not truly in default."[116] But in response to Defendant's requests for admissions, Plaintiff admits that he did not make all payments "called for under the Loan before the date the payments were due" and, when asked to admit to Plaintiff's failure to make specific payments, Plaintiff responded multiple times: "Cannot Admit or Deny; Plaintiff did not keep records of his payments and cannot remember exact events from that time period."[117] Plaintiff argues that he "did not admit that he caused the initial default," and that his missed payments were actually "the few he missed after Defendant had declared his account allegedly in default, made it impossible for him to perform, then stopped accepting further payments."[118] The only evidence Plaintiff points to, however, are

---

[112] *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.), *quoted in Water Dynamics, Ltd. v. HSBC Bank USA, NA*, 509 F. App'x 367, 368 (5th Cir. 2013).
[113] *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001).
[114] *Senger Creek Dev., LLC v. Fuqua*, No. 01-15-01098-CV, 2017 WL 2376529, at *8 (Tex. App.—Houston [1st Dist.] June 1, 2017, no pet.).
[115] *See C & K Invs. v. Fiesta Grp.*, 248 S.W.3d 234, 254 (Tex. App.—Houston [1st Dist.] 2007, no pet.).
[116] Dkt. No. 18 at 10, ¶ 6.12.
[117] Dkt. No. 17-6 at 21.
[118] Dkt. No. 18 at 11, ¶ 6.17.

the same responses to Defendant's requests for admission, wherein Plaintiff states that he "did not keep records of his payments and Defendant never provided the accounting as requested. Therefore, Plaintiff cannot admit or deny whether there was a default."[119] Plaintiff makes this same statement in response to numerous requests for admission regarding the specific details of the default.[120] Plaintiff also argues that he was not truly in default because Defendant sent "a number" of payments back,[121] but the Deed of Trust specifically provides that "Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current."[122] Because Plaintiff did not keep any accounting, Plaintiff neither contends nor points to evidence that he tendered fully curative payments that Defendant refused to accept.  Plaintiff appears to be making the argument that some evidence may conceivably indicate he was not in default, but this does not meet the summary judgment standard. Plaintiff must present affirmative evidence supporting his allegations to avoid summary judgment.[123] Plaintiff presents no evidence to *controvert* Defendant's evidence that he was in default and present a genuine issue of material fact.

Plaintiff also confusingly contends "if it were for with Defendant Penny Mac made it impossible for perform by curing and/or reinstating, and therefore deprived him of his right under sections 22 & 19 of the Deed of Trust."[124] The Court interprets this argument as reliance on the same evidence and arguments discussed above with respect to the breach of contract claim and the default.[125] The Court rejects the argument for the same reasons.

---

[119] Dkt. No. 17-6 at 23.

[120] *See id.* at 22–24.

[121] Dkt. No. 18 at 11, ¶ 6.17.

[122] Dkt. No. 17-2 at 5, § 1.

[123] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986); *see Pa. R.R. v. Chamberlain*, 288 U.S. 333, 338–39 (1933) (holding that a witness who merely heard a crash of cars, without witnessing the focal death, did not present a genuine issue of material fact as his testimony amounted to speculation about the facts).

[124] Dkt. No. 18 at 10, ¶ 6.12. The Court recommends against the use of incomprehensible language.

[125] *Id.* (citing Dkt. No. 18-1 at 1–2).

Plaintiff last argues "that the foreclosure sale amount of $109,265.00 if [sic] grossly inadequate herein."[126] Plaintiff avers that the "foreclosure sale amount is wrongful and grossly disproportionate to the principle of my Loan on that date. I think my Home is worth over $149.752.00."[127] Plaintiff included a hard-to-read exhibit from the house value estimator site Zillow that indicates Plaintiff's house value is $149,752.[128] He also included a Substitute Form 1098 Mortgage Interest Statement dated January 24, 2020, from PennyMac Loan Services, LLC that indicates an outstanding mortgage principal of $135,735.52.[129] On the other hand, Defendant argues the appraised value of the property according to the Hidalgo County Appraisal District as of January 1, 2020, is $126,267.[130] Plaintiff ultimately argues the foreclosure sale amount, $109,265, is a "grossly disproportionate sales price" that indicates a defect in the foreclosure process.[131]

"Evidence of price paid, nearby sales, tax valuations, appraisals, online resources, and any other relevant factors may be offered to support" a property valuation.[132] When a property's market value is approximately established, a substantially lower sales price may be grossly inadequate or disproportionate.[133] Nonetheless, "[t]he weight of Texas authority rejects a determination of gross inadequacy where, as here, property sells for over 60% of fair market value, and precedent exists for disregarding a jury finding to the contrary."[134] "Texas cases establish that a foreclosure price exceeding 50% is not grossly inadequate."[135] However, Plaintiff

---

[126] Dkt. No. 18 at 12, ¶ 6.18.
[127] Dkt. No. 18-1 at 2.
[128] Dkt. No. 18-4.
[129] Dkt. No. 18-5.
[130] Dkt. No. 17 at 12 n.3 (citing Dkt. No. 17-6 at 5).
[131] Dkt. No. 18 at 12, ¶¶ 6.19–6.20.
[132] *Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 159 (Tex. 2012).
[133] *See Senger Creek Dev., LLC v. Fuqua*, No. 01-15-01098-CV, 2017 WL 2376529, at *9 (Tex. App.—Houston [1st Dist.] June 1, 2017, no pet.).
[134] *FDIC v. Blanton*, 918 F.2d 524, 531–32 (5th Cir. 1990) (footnote omitted).
[135] *Water Dynamics, Ltd. v. HSBC Bank USA, NA*, 509 F. App'x 367, 369 (5th Cir. 2013).

challenges the jurisprudence indicating that a sale price greater than 50% of the appraised value is not grossly inadequate as a matter of law.[136] Plaintiff's first case, *Martin*, holds that "[w]hile 'a sales price of more than fifty percent of property value is not grossly inadequate as a matter of law,' additional disparities with respect to 'inadequate consideration [may create] ... a fact question.'"[137] However, the *Martin* court simply invents this point of law, as it is not found in the case quoted.[138] Similarly, the *Stevens* court holds in a footnote that "[t]he issue of grossly inadequate consideration is also a fact question,"[139] but neither case cited supports that proposition. One cited case held simply held that "[t]he jury failed to find that the trustee received grossly inadequate consideration for the property. We cannot say that such answer is clearly wrong, nor that an affirmative answer was established as a matter of law."[140] Contrary to Plaintiff's position, this case supported a finding that the plaintiff received adequate consideration. The other holds only that "a party must show an irregularity which was calculated to affect the sale and a grossly inadequate price in order to have the sale set aside," without determining that grossly inadequate consideration cannot be a question of law.[141] Also contrary to Plaintiff's authority, an early Texas Court of Civil Appeals case holds that a sale price of at least 50% cannot be grossly inadequate.[142] Plaintiff's last cited case is actually in accord with

---

[136] Dkt. No. 18 at 13, ¶ 6.20.

[137] *Martin v. Southside Bank*, 06-18-00026-CV, 2018 WL 4344387, at *4 (Tex. App.—Texarkana Sept. 12, 2018, no pet.) (quoting *Terra XXI, Ltd. v. Harmon*, 279 S.W.3d 781, 788 (Tex. App.—Amarillo 2007, no pet.)).

[138] *See Terra XXI, Ltd.*, 279 S.W.3d at 788.

[139] *Charter Nat'l Bank—Houston v. Stevens*, 781 S.W.2d 368, 374 n.2 (Tex. App.—Houston [14th Dist.] 1989, writ denied).

[140] *F L R Corp. v. Blodgett*, 541 S.W.2d 209, 215 (Tex. Civ. App.—El Paso 1976, writ ref'd n.r.e.).

[141] *Intertex, Inc. v. Walton*, 698 S.W.2d 707, 710 (Tex. App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.).

[142] *Richardson v. Kent*, 47 S.W.2d 420, 425 (Tex. Civ. App.—Dallas 1932, no writ) ("We know of no case holding that, when property at a forced sale brings 50 per cent. of its value, the consideration paid by the purchaser is decreed as a matter of law, to be grossly inadequate; hence no presumption of fraud can be indulged in respect to this sale, and, without such presumption, the judgment of the trial court cannot be sustained, notwithstanding the action of the trustee in not giving personal notice to Kent and in selling the land with only one bidder present.").

this early precedent, as it merely holds that a sale price of about 26% of the estimated market value was sufficient to create a fact issue for the jury and prevent summary judgment.[143]

Even if the Court was uncertain of Texas law, this Court is bound by Fifth Circuit precedent interpreting Texas law and establishing that a sale price over 50% or 60% of market value is not grossly inadequate as a matter of law.[144] A "selling price [of] 54% of the alleged value . . . is not grossly in-adequate as a matter of law."[145] Here, even if the Court accepted Plaintiff's unauthenticated Zillow evidence that the relevant property value is $149,752,[146] rather than the Hidalgo County Appraisal District evidence that it is $126,267,[147] the auction sale price of $109,265[148] would still amount to about 73% of the property value. The Court cannot say this sale price is grossly inadequate as a matter of law.

The Court has addressed Plaintiff's arguments that "there are three defect [sic] in the alleged foreclosure by Defendant Penny Mac."[149] Plaintiff cannot establish any defect in the foreclosure sale proceedings or a grossly inadequate selling price. Therefore, the Court holds that Defendant is entitled to judgment as a matter of law and **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's wrongful foreclosure claim and **GRANTS** judgment on the merits in favor of Defendant with respect to this claim.

### 3. Fraud Claim

To prevail on a fraud claim, a plaintiff must show: (1) the defendant made a material representation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) the defendant intended to induce the plaintiff to act upon the

---

[143] *Del Mar Capital, Inc. v. Prosperity Bank*, No. 01-14-00028-CV, 2014 WL 5780302, at *6 (Tex. App.—Houston [1st Dist.] Nov. 6, 2014, no pet.) (mem. op.).
[144] *See supra* notes 134–135.
[145] *Chin Kim v. Mortg. Elec. Registration Sys.*, 716 F. App'x 339, 340 (5th Cir. 2018).
[146] *See* Dkt. No. 18-4; Dkt. No. 18-1 at 2 ("I think my Home is worth over $149.752.00.").
[147] *See* Dkt. No. 17-6 at 5.
[148] Dkt. No. 17-5 at 3.
[149] Dkt. No. 18 at 10, ¶ 6.12.

representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.[150]

"A representation is material if the representation was important to the plaintiff in making a decision, such that a reasonable person would be induced to act on and attach importance to the representation in making the decision."[151]

Plaintiff first argues that Defendant committed fraud when Defendant "made it impossible for Orlando to perform after verbally telling him he could do so."[152] Plaintiff avers that Defendant at some point stopped accepting his mortgage payments, and when he called to remediate the issue, "[t]hey stated that [he] could fix the problem, but never actually allowed [him] to do so." Plaintiff also avers Defendant "failed to give [him his] required opportunity to cure and/or reinstate like they said on the phone."[153] Plaintiff seems to be suggesting that Defendant's representation that he could cure was the materially false statement. But it was not false. As Plaintiff repeatedly acknowledges, the Deed of Trust provides that Plaintiff could have cured overdue payments and brought his mortgage current.[154] Defendant's evidence—the letter "Notices of Default and Intent to Accelerate"—also show that Plaintiff could have cured.[155] Plaintiff also appears to argue that Defendant's representation was false because Plaintiff did attempt to cure as instructed but was rebuffed.[156] Plaintiff's evidence does not show, however, that he transmitted curative payments as instructed.[157] Again, the evidence shows that Plaintiff

---

[150] *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (internal quotation marks omitted).

[151] *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 496 (Tex. 2019).

[152] Dkt. No. 18 at 14, ¶ 6.23.

[153] Dkt. No. 18-1 at 1–2.

[154] Dkt. No. 17-2 at 12–13, §§ 19, 22.

[155] *See* Dkt. No. 17-1 at 18 & 31.

[156] *See* Dkt. No. 18 at 15, ¶ 6.26 (citation omitted) ("Orlando has shown here that a genuine dispute of material facts exists on when the conversations occurred and what was said. Defendant Penny Mac claims they explained on one or more occasion exactly what Plaintiff needed to do to cure his default but failed to comply. Orlando was ready, willing, and able to perform, but Defendant Penny Mac clearly had other motives and was in a position of power to control the situation.").

[157] *See* Dkt. No. 18-1 at 1–2.

admits to not making all timely payments and Plaintiff failed to "keep records of his payments" and "cannot remember exact events" from around the time Plaintiff defaulted.[158] One specific interrogatory is particularly illuminating:

> Describe each time you attempted to make payments on the Loan but were not allowed to do so as alleged in Paragraph 4.3 of the Complaint and Exhibit A attached to the Complaint. Please include the date of the attempt, the amount you attempted to pay, how you attempted to pay the amount, the person that did not allow you make that payment, and any reason provided to you for not being allowed to make the payment.

> ANSWER: I do not remember each time I attempted to make payments. I have severe diabetes, and due to that condition, cannot remember a lot of things. I do not remember the exact date, amount, or the person I spoke to. However, I attempted to make payments over the phone but **don't recall the reason they didn't allow me**. I recall the operator recommending that I hire an attorney.[159]

In sum, Plaintiff does not point to any evidence that Defendant made a material representation that was false. The representation that Plaintiff could cure was true. But, as Defendant's evidence further shows, "Mr. Munguia [simply] failed to cure his default under the Loan on or before September 19, 2019. Mr. Munguia additionally failed to tender the amount necessary to reinstate the Loan on or before the January 7, 2020 foreclosure sale of the Property."[160]

Plaintiff also argues that Defendant represented the outstanding principal on the mortgage was $135,735.52 in January 2020, but Defendant purchased the home at auction for $109,265 that same month, "[t]herefore, Defendant Penny Mac's false representation that Plaintiff only owed $109,265.00 on January 7, 2020 has damaged him by creating a wrongful deficiency amount."[161] However, as Defendant points out,[162] Plaintiff in the Deed of Trust "authorize[d]

---

[158] Dkt. No. 17-6 at 21–22.
[159] Dkt. No. 17-6 at 11, ¶ 2; *see id.* at 12, ¶ 4 ("Describe any actions or inactions of Defendant that made it impossible for you to perform under the Loan as alleged in Paragraphs 4.3,5.1,5.5, and 5.12 of the Complaint. ANSWER: Defendant would not be reasonable and help me with my loan. When I spoke to the agents on the phone they were mean and not helpful.").
[160] Dkt. No. 17-1 at 3, ¶ 9.
[161] Dkt. No. 18 at 15, ¶ 6.28.
[162] Dkt. No. 20 at 5–6.

Trustee to sell the Property to the highest bidder for cash in one or more parcels and in any order Trustee determines. Lender or its designee may purchase the property at any sale."[163] Furthermore, the Texas Property Code authorizes a foreclosure sale for less than the unpaid mortgage balance and a subsequent action to collect the deficiency.[164] The Court declines to recognize Plaintiff's confusing assertion that the amount the home sold for at foreclosure auction was somehow an actionable misrepresentation of the balance Plaintiff owed on the mortgage. Plaintiff cites no authority that "Defendant had a duty to offer the Home for sale at the amount of principal due on the Loan on that date" and the Court rejects this argument.[165]

Plaintiff argues only the foregoing two representations were actionable under Plaintiff's fraud claim.[166] The Court agrees with Defendant that Plaintiff fails to identify any actionable misrepresentations.[167] Accordingly, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's fraud claim and **GRANTS** judgment on the merits in favor of Defendant with respect to this claim. The Court has no occasion to reach and makes no determination upon the application of the economic loss rule or the statute of frauds to Plaintiff's fraud claim.[168]

### 4. *Texas Declaratory Judgment Act Claim and Injunctive Relief*

Texas law provides that a "person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise

---

[163] Dkt. No. 17-2 at 13, § 22.
[164] *See* TEX. PROP. CODE ANN. § 51.002–.003 (West 2020).
[165] Dkt. No. 18 at 15, ¶ 6.28.
[166] Dkt. No. 18 at 16, ¶ 6.29.
[167] Dkt. No. 17 at 6.
[168] *See* Dkt. No. 17 at 8–9.

and obtain a declaration of rights, status, or other legal relations thereunder."[169] Plaintiff brings a cause of action under this statute.[170] Defendant moves for summary judgment because Plaintiff alleges no viable causes of action.[171] Plaintiff's only response is that he "is entitled to declaration of validity of those contractual relations. Consequently, Defendant Penny Mac is not entitled to dismiss Orlando's declaratory judgment claim as a matter of law and therefore Defendant Penny Mac's Motion for Summary Judgment should be denied."[172] Plaintiff cites no authority for his position. The Fifth Circuit holds that the federal Declaratory Judgment Act and a request for injunctive relief are remedial in nature and dependent on underlying causes of action,[173] and Plaintiff presents no authority for why the Court's holding should be different in this context.[174] The Court agrees with Defendant that, "[b]ecause Plaintiff fails to set forth a viable underlying cause of action, he is not entitled to the requested declaratory and injunctive relief as a matter of law."[175] Furthermore, because the Court granted summary judgment in favor of Defendant with respect to Plaintiff's breach of contract claim, the Court has effectively resolved the construction and validity of Plaintiff's contracts and determined Plaintiff's legal relations with respect to the instruments. Accordingly, the Court **GRANTS** Defendant's motion for summary judgment with respect to Plaintiff's declaratory judgment and injunctive relief claims and **GRANTS** judgment on the merits in favor of Defendant with respect to these claims.

### IV. CONCLUSION AND HOLDING

---

[169] TEX. CIV. PRAC. & REM. CODE ANN. § 37.004(a) (West 2020).
[170] Dkt. No. 15 at 7, ¶¶ 5.16–5.17.
[171] Dkt. No. 17 at 13, § D.
[172] Dkt. No. 18 at 9, ¶ 6.10.
[173] *See Anderson v. Jackson*, 556 F.3d 351, 360 (5th Cir. 2009) (injunctive relief); *Collin Cty. v. Homeowners Ass'n for Values Essential to Neighborhoods (HAVEN)*, 915 F.2d 167, 171 (5th Cir. 1990) (declaratory judgment).
[174] *See* Dkt. No. 18 at 9, ¶ 6.10 & at 17, ¶ 6.30.
[175] Dkt. No. 20 at 7, § C.

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment in full.[176] The Court **AWARDS** summary judgment in favor of Defendant with respect to all of Plaintiff's claims in this action. Plaintiff's claims are **DISMISSED WITH PREJUDICE**. Upon entry of final judgment pursuant to Federal Rule of Civil Procedure 54, this case will terminate.

IT IS SO ORDERED.

DONE at McAllen, Texas, this 24th day of August 2020.

_____
Micaela Alvarez
United States District Judge

---

[176] Dkt. No. 17.